USDC SCAN INDEX SHEET

















JPP   11/3/03    9:34

3:03-CV-02153   PALA BAND OF MISSION V. DPR CONSTRUCTION INC

*1*

*P.*

Craig A. Ramseyer (Bar No. 99099)
Scott R. Omohundro (Bar No. 179421)
PROCOPIO, CORY, HARGREAVES
    & SAVITCH LLP
530 B Street, Suite 2100
San Diego, California 92101
Telephone:   (619) 238-1900
Facsimile:   (619) 235-0398

Attorneys for Respondent,
PALA BAND OF MISSION INDIANS

FILED

JUL 3 0 2003

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

PALA BAND OF MISSION INDIANS,

        Petitioner,

v.

DPR CONSTRUCTION, INC.,

        Respondent,

Case No. 03CV 2153 DMS AJB

**PALA BAND OF MISSION INDIANS'
PETITION TO VACATE
ARBITRATION AWARD**

[9 U.S.C. §§ 9, et seq.]

Date:
Time:
Dept:
Judge:

///
///
///
///
///
///
///
///
///
///
///
///

108798.000005/431113.01

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................... 2

    A.    The Project ............................................................................................. 2

    B.    Agreement To Arbitrate ........................................................................ 5

    C.    The Arbitration ...................................................................................... 5

III.  FEDERAL SUBJECT MATTER JURISDICTION ............................................. 7

IV.  DISCUSSION ...................................................................................................... 9

    A.    Manifest Disregard Of The Law .......................................................... 10

    B.    Application Of The Modified Total Cost Method ................................. 11

    C.    The Arbitrator Manifestly Disregarded Controlling Federal Law
          Regarding The Modified Total Cost Method Of Calculating
          Damages ............................................................................................... 12

V.   THE ARBITRATOR'S AWARD OF PRE-JUDGMENT INTEREST
      SHOULD BE VACATED ................................................................................ 18

VI.  CONCLUSION ................................................................................................... 19

108798.000005/432193.01

1

## TABLE OF AUTHORITIES

2                                                                                    **Page**

3    <u>Cases</u>

4    <u>Amelco Electric v. City of Thousand Oaks,</u>
     27 Cal.4th 228, 243 (2002)........................................................................9,17
5
     <u>American Postal Workers v. U.S. Postal Service,</u>
6    682 F.2d 1280, 1284 (9th Cir. 1982) ...................................................... 10

7    <u>Bagwell Coatings, Inc. v. Middle South Energy, Inc.</u>
     797 F.2d 1298, 1307 (5th Cir. 1986) ........................................................ 6
8
     <u>Barbara v. New York Stock Exch., Inc.</u>
9    99 F.3d 49, 54 (2d Cir.1996).................................................................... 7

10   <u>Behlar v. Smith,</u>
     719 F.2d 950, 954 (8th Cir.1984)............................................................ 18
11
     <u>Boyajian v. United States,</u>
12   423 F.2d 1231, 1240 (1970) ..............................................................8,9,11

13   <u>Cardin v. De La Cruz</u>
     671 F.2d 363, 365 (9th Cir. 1982)............................................................. 7
14
     <u>Dawco Construction, Inc. v. United States,</u>
15   930 F.2d 872, 882 (Fed.Cir.1991) .......................................................9,11

16   <u>Denver & Rio Grande Western R. v. Union Pac.R.,</u>
     119 F.3d 847, 849 (10th Cir. 1997) ......................................................... 10
17
     <u>DiRussia v. Dean Witter Reynolds, Inc.,</u>
18   121 F.3d 818, 821 (2d Cir.1997)........................................................8,10,11

19   <u>F.H. McGraw and Company v. United States,</u>
     130 F.Supp.394 (1955)..........................................................................,11
20
     <u>Glennon v. Dean Witter Reynolds, Inc.,</u>
21   83 F.3d 132, 135 (6th Cir.1996)............................................................ 10

22   <u>Great Lakes Dredge & Dock Co. v. United States</u>
     96 F.Supp.923 (Ct.Cl. 1951) .............................................................8,9,11
23
     <u>Greenberg v. Bear Stearns & Co.</u>
24   220 F.3d 22, 25-27 (2d Cir. 2000)...........................................................7,8

25   <u>In re Meyertech Corp.,</u>
     831 F.2d 410 (3rd Cir.1987)................................................................... 12
26
     <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,</u>
27   808 F.2d 930, 933 (2d Cir.1986) ............................................................ 10

28

*O.R. Securities, Inc. v. Professional Planning Assocs., Inc.,*
857 F.2d 742, 747 (11th Cir. 1988) ............................................................................ 10

*Prudential-Bache Securities, Inc. v. Tanner,*
72 F.3d 234, 237 (1st Cir.1995) ................................................................................ 10

*Reflection, Inc. v. Dalton,*
60 F.3d 1572, 1583 (Fed.Cir.1995) .............................................................................. 9

*Servidone Construction Corp. v. United States,*
931 F.2d 860 (1991) .......................................................................................... 9,11

*Sheet Metal Wkrs. Intern. Ass'n v. Kinney Air Cond.,*
756 F.2d 742, 746 (9th Cir. 1985) .............................................................................. 10

*Stroh Container Co. v. Dephi Industries, Inc.,*
783 F.2d 743 (8th Cir. 1986) ................................................................................... 18

*S.W. Electronics & Manufacturing Corp. v. United States,*
655 F.2d 1078 (Ct.Cl.1981) ...................................................................................... 9

*Westmoreland Capital Corp. v. Findlay*
100 F.3d 263, 267 (2d Cir. 1996) ................................................................................ 7

*WRB Corp. v. United States,*
183 Ct.Cl. 409 (1968) .................................................................................... 9,11,12

**Statutes**

9 U.S.C. §10 ........................................................................................................ 7

Cal.Civ. Code §3287(a) ............................................................................................ 18

1  Craig A. Ramseyer (Bar No. 99099)
   Scott R. Omohundro (Bar No. 179421)
2  PROCOPIO, CORY, HARGREAVES
        & SAVITCH LLP
3  530 B Street, Suite 2100
   San Diego, California 92101
4  Telephone:    (619) 238-1900
   Facsimile:    (619) 235-0398
5
   Attorneys for Respondent,
6  PALA BAND OF MISSION INDIANS

7

8                  UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10
   PALA BAND OF MISSION INDIANS,          Case No.
11
                   Petitioner,            **PALA BAND OF MISSION INDIANS'**
12                                         **PETITION TO VACATE**
       v.                                  **ARBITRATION AWARD**
13
   DPR CONSTRUCTION, INC.,                [9 U.S.C. §§ 9, et seq.]
14
                   Respondent,            Date:
15                                         Time:
                                           Dept:
16                                         Judge:

17

18                              I.

19                      **INTRODUCTION**

20         In June 2000, the Pala Band of Mission Indians ("Pala") entered into a contract with DPR

21  Construction, Inc. ("DPR") for the construction of a casino on tribal lands (the "Project").

22  Following completion of the Project, DPR instituted arbitration proceedings (the "Arbitration"),

23  claiming it had incurred additional costs that could only be calculated by the "total cost method."

24  In other words, DPR claimed that it was entitled to recover from Pala the difference between

25  DPR's total costs on the Project and its original estimated costs to construct the Project.

26         The total cost method of calculating damages has its origin in the federal courts and is

27  now recognized by federal substantive law as a technique for establishing damages that is

28  tolerated only when no other mode is available and when the reliability of the supporting

---

108798.000005/431113.01

1   evidence is fully substantiated.  Even then,  the federal courts have established a stringent four-

2   part test for that must be applied to the <u>smallest affected portion</u> of the contractual relationship.

3   The acceptability of the method hinges on proof that (i) the nature of the particular losses make it

4   impossible or highly impracticable to determine them with a reasonable degree of accuracy; (ii)

5   the claimant's estimated costs are reasonable; (iii) its actual costs were reasonable; and (iv)

6   claimant was not responsible for the added expenses.  The second requirement, in particular, is

7   designed to prevent the claimant from recovering a windfall in the event that is original estimated

8   costs were unreasonably low.

9       At the Arbitration, DPR submitted Arbitration Exhibit 786, an eighteen (18) page

10  spreadsheet which identified line item by line item each component of its bid.  Exhibit "A" to

11  Pala's Notice of Lodgment (hereinafter "NOL").  DPR admitted that its total cost claim was

12  governed by the four-part test.  On the record, the Arbitrator acknowledged the four-part test and

13  the requirement that the claimant must prove the reasonableness of each of the line items of the

14  estimate.  Yet, in support of Arbitration Exhibit 786, DPR offered absolutely no evidence of the

15  reasonableness of its estimate for any line item of work for which it claimed additional

16  compensation.   Instead, DPR relied on conclusory statements that its bid *as a whole* was

17  reasonable.  Despite this complete failure of proof, the Arbitrator disregarded the very federal law

18  that he expressly acknowledged as applicable during the course of the Arbitration, and allowed

19  DPR to bypass altogether the second part of the four-part test.  Because the resulting arbitration

20  award in favor of DPR demonstrates a manifest disregard of federal law, it cannot be allowed to

21  stand.

22                                          **II.**

23                              **STATEMENT OF FACTS**

24  A.      **The Project.**

25      Pala is a federally recognized Indian tribe occupying lands in San Diego County held in

26  trust for it by the United States Government.  Pala traces its heritage to both the Cupa and

27  Luiseno tribes.  The Cupenos were expelled more than 90 years ago from their native homeland

28  (now Warner Hot Springs) and came to live as one among the Luiseno tribe in Pala, California.

1  The reservation is about 11,800 acres and sits aside the Palomar Mountain range.

2     In September 1999, Pala and the State of California entered into a Tribal-State Gaming

3  Compact (the "Compact") permitting class III video devices (lotteries, slot machines, video

4  gaming devices) on tribal lands. In order to amend the California Constitution to permit the type

5  of gaming covered in the Compact, Proposition 1A was placed on the March 2000 Ballot. With

6  64.5 percent of California voters casting a "yes" vote, the initiative amended the constitutional

7  ban on casinos and lotteries to allow gaming on tribal lands. In May 2000, the Department of the

8  Interior approved the Pala Compact, and this approval cleared the way for Pala to begin

9  development of its casino.

10     In November 1999, Pala published a Request for Proposal to construct the Project. After

11  reviewing proposals and interviewing interested general contractors, Pala selected DPR in

12  December 1999 to be the general contractor. Pala and DPR thereafter entered into negotiations

13  for a Guaranteed Maximum Price ("GMP") contract.[1]  Due to a provision in the Compact

14  between Pala and the State of California, Pala was required to place its slot machines in

15  commercial operation by a specific date, or forfeit the machines. DPR prepared and forwarded to

16  Pala several accelerated construction proposals with increased costs for each reduction in

17  construction duration. Ultimately the agreed-upon duration for construction of the Project was

18  nine months.

19     Pala and DPR executed the GMP contract in June 2000 (the "GMP Contract"). Exhibit

20  "B" to NOL. The GMP Contract provided for construction work to be substantially complete no

21  later than 273 calendar days (nine months) from the Notice to Proceed. DPR received Notice to

22  Proceed on June 19, 2000, thereby establishing a completion date of March 19, 2001. At the time

23  DPR mobilized on site it still had not developed a final GMP amount, although it had developed

24  budgets based on the current status of the design. A GMP price of $37,290,542 was eventually

25  agreed to and formalized by the parties on or about October 18, 2000.

26

---

27  [1]Under a GMP contract the contractor is compensated on the basis of his actual costs plus a fee for overhead and profit that is usually calculated as a percentage of the costs. Any costs over the guaranteed maximum are borne by

28  the contractor.

PALA BAND OF MISSION INDIANS' PETITION TO VACATE ARBITRATION AWARD

1      After construction started, DPR proved unable administratively to maintain the schedule.

2  By December 2000, DPR had acknowledged the deteriorating situation and requested that the

3  contract be converted from a GMP to a Lump Sum contract.[2]  Converting to a Lump Sum

4  contract offered DPR the opportunity to capture all its costs, both those expended and those

5  estimated for the future.  Included in the Lump Sum contract were all the costs of the casino, as

6  well as for the construction of a concrete parking structure, improvements to Highway 76, a

7  wastewater treatment facility, and a freshwater well.  DPR prepared a lump sum budget during

8  the negotiations with Pala that was based upon estimates for self-performed work and "buy-outs"[3]

9  of subcontractors.  On January 22, 2001, with just 56 calendar days remaining before the

10  scheduled completion date, the parties signed an amendment to the GMP Contract, converting it

11  to a Lump Sum contract in the amount of $56,150,000.00 (the "Lump Sum Contract").  Exhibit

12  "C" to NOL.

13      The Project was substantially completed and opened on April 3, 2001.  In July 2001, Pala

14  made a payment to DPR representing DPR's retention and its last payment application less

15  amounts withheld for specified repairs.  In September 2001, six (6) months after substantial

16  completion, DPR presented a claim for over $5 million for allegedly approved but unpaid change

17  orders, pending change orders, and "job compression/completion costs."  DPR claimed that if

18  agreement was not reached on its demand, it was entitled to recover <u>all</u> of its actual costs, less

19  amounts paid, in disregard of the Lump Sum Contract amount.

20      Pala analyzed all of the change orders, provided DPR a written explanation of the

21  acceptance or rejection of each claim, and forwarded a check in the amount of $823,021 for the

22  accepted change orders.  Pala also acknowledged that it would consider paying an additional

23  $270,290.00 provided DPR submitted an explanation and additional back-up material for certain

24

25

---

26  [2]Under a Lump Sum contract the contractor agrees to complete all work for a fixed price, inclusive of overhead and profit.  The price can be modified by change orders to reflect the cost of extra work.

27

28  [3]A general contractor "buys-out" a subcontractor when it obtains a commitment from that subcontractor to do a certain scope of work for a specified amount of money.

PALA BAND OF MISSION INDIANS' PETITION TO VACATE ARBITRATION AWARD

108798.000005/431113.01

specified change orders not otherwise paid or denied.  DPR never furnished the requested information.

## B.  Agreement to Arbitrate.

The Claims Resolution Process set forth in the GMP Contract and carried over to the Lump Sum Contract at Exhibit "J" provides for arbitration of disputes between the parties. Exhibit "J" states in pertinent part:

> 2.  Binding Arbitration. . . . All disputes . . . shall be resolved by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect on the date demand for arbitration is made (the "Rules"), and the Federal Arbitration Act.

> 3.  Filing Suit / Enforcing Arbitration Award.  Suit may be pursued in the United States District Court for the Southern District of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court for the purpose of compelling arbitration or enforcing any arbitration award or judgment arising out of the Contract, or any other agreement or instrument related to or referenced by the Contract.

Article 14.1 of the GMP Contract also provides that an arbitration award will be enforced in the United States District Court for the Southern District of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.  Only if the Southern District of California lacks jurisdiction may the parties seek to enforce the award in the California State Court system, the Pala Commercial Obligations Court, or any other court of competent jurisdiction.  Exhibit "J" to Lump Sum Contract, attached as Exhibit "C" to NOL.

## C.  The Arbitration.

DPR instituted arbitration proceedings by filing a Demand for Arbitration with the American Arbitration Association ("AAA") on or about June 20, 2002.  Exhibit "D" to NOL. DPR sought damages in excess of $5.7 million for its additional work and that of its subcontractors.  DPR reduced its claim to approximately $3.6 million at Arbitration.  The Arbitration was heard between July 24, 2003 and August 8, 2003, by retired San Diego Superior Court Judge Kevin Midlam.  DPR contended it was entitled to calculate its damages based upon

1  the modified total cost theory[4] because field changes allegedly requested by Pala over the final 60

2  days of the Project made it "impractical" for DPR to track its actual costs and allocate them to a

3  specific job cost line item.   Pala contended the proper resolution of the case required an

4  accounting not of total costs, but of the Lump Sum Contract price plus the reasonable value of

5  proposed change orders, less payments and legitimate offsets.

6        DPR provided the Arbitrator with Arbitration Exhibit 786 as the basis for its modified

7  total cost claim.  Exhibit "A" to NOL.  Arbitration Exhibit 786 identifies **over 400 individual**

8  **line items of specific job costs** broken down by phase code and description (i.e., phase code 01-

9  0100 under Casino - Site Cleaning & Dust Control).  Each discreet line item of job costs includes

10  the following information (in columns from left to right):   (i) DPR's lump sum budget; (ii)

11  category transfers; (iii) DPR's conformed budget (lump sum budget +/- DPR's category

12  transfers); (iv) total cost; (v) any variance (overrun or underrun) between DPR's conformed

13  budget and total cost; and (vi) an allocation of the variance between Pala and DPR.  Despite

14  calling ten (10) witnesses,[5] DPR offered no evidence whatsoever regarding the reasonableness of

15  its original estimate for each line item of work for which it was seeking additional compensation.

16  DPR also failed to present any documentary evidence supporting its contention that Pala, not

17  DPR, was responsible for DPR exceeding its line item estimates.   DPR instead relied on

18  conclusory statements that its estimates or budget *as a whole* was reasonable.  Significantly, DPR

19  declined to present evidence of the reasonableness of its line item estimates even after the

20  Arbitrator agreed on the record with Pala that such evidence is required.

21

22

23

---

24  [4]The modified total cost approach adjusts the contract amount for mistakes the contractor may have made in its
    estimate, and adjusts the total amount for cost increases attributable to the contractor.  Bagwell Coatings, Inc. v.

25  Middle South Energy, Inc., 797 F.2d 1298, 1307 (5th Cir. 1986).

26  [5]DPR's witnesses included:   Executive Vice-President Peter Salvati; Regional Manager Jay Leopold; Project
    Manager Scott Carriveau; lead superintendent Andy Dillavou; mechanical/electrical/plumbing coordinator Mike

27  Schaer; risk manager Mark Conover; DPR's flooring subcontractor Scott Rouse (Rouse Company); DPR's HVAC
    sub-contractor Jim Xitco (ACCO Mechanical); and DPR's electrical subcontractor Howard Powell and Greg Trejo

28  (Berg Electric).

PALA BAND OF MISSION INDIANS' PETITION TO VACATE ARBITRATION AWARD

1    The Arbitrator issued an award on August 22, 2003, and augmented the same on

2    September 30, 2003, (collectively the "Award"). Exhibit "G" to NOL. While ruling that the

3    claim presented by DPR constituted a modified total cost claim, and acknowledging that DPR had

4    not presented evidence on the second part of the applicable four-part test, the Arbitrator

5    nevertheless awarded DPR the sum of $2,418,785 together with interest at the legal rate of 10%

6    per annum from June 15, 2001, until paid.

7

### III.

### FEDERAL SUBJECT MATTER JURISDICTION

9    The Federal Arbitration Act ("FAA") creates a body of federal substantive law governing

10    arbitration. The FAA expressly authorizes petitions to confirm, vacate or modify an arbitration

11    award in district courts. 9 U.S.C. §10. While the FAA does not confer subject matter jurisdiction

12    on a petition to vacate, a petition may be brought in federal court if: (1) the claim is already

13    pending in a federal court having subject matter jurisdiction; (2) an independent basis for federal

14    jurisdiction exists (diversity of citizenship, admiralty, or interpretation of a collective bargaining

15    agreement under 29 U.S.C. §185(a); or (3) *the petitioner asserts that the award was rendered in*

16    *"manifest disregard of federal law."* Greenberg v. Bear Stearns & Co, 220 F.3d 22, 25-27 (2d

17    Cir. 2000); Westmoreland Capital Corp. v. Findlay, 100 F.3d 263, 267 (2d Cir. 1996). The

18    District Court has jurisdiction to hear Pala's challenge to the Arbitration Award because Pala is

19    seeking vacatur on the ground of "manifest disregard of federal law."[6]

20    The issue for the Second Circuit in Greenberg, supra, was whether and under what

21    circumstances a federal court may entertain a motion to vacate an award where an alternative

22    basis for jurisdiction is absent. The Second Circuit found federal subject matter jurisdiction may

23    exist where the "ultimate disposition of the matter 'necessarily depends on resolution of a

24    substantial question of federal law'." Greenberg, supra, citing Barbara v. New York Stock Exch.,

25    Inc., 99 F.3d 49, 54 (2d Cir. 1996). Whether or not a petition to vacate under Section 10 raises a

26

27

28    [6]Jurisdiction is also supported by the Ninth Circuit's ruling in Cardin v. De La Cruz, 671 F.2d 363, 365 (9th Cir. 1982), [federal courts have federal question jurisdiction over actions based on the federal common law.]

1   substantial federal question turns on the ground for the challenge. The Second Circuit held that a

2   substantial federal question is presented and the federal courts have jurisdiction to entertain the

3   petition when the petitioner "complains principally and in good faith that the award was rendered

4   in manifest disregard of federal law." Greenberg, supra, 220 F.3d at 25-27.

> In contrast to grounds of review that concern the arbitration process itself -- such as corruption or abuse of power -- review for manifest disregard of federal law necessarily requires the reviewing court to do two things: first, determine what the federal law is, and second, determine whether the arbitrator's decision manifestly disregarded that law. This process so immerses the federal court in questions of federal law and their proper application that federal question subject matter jurisdiction is present. Ibid.

> Where the arbitrators' alleged manifest disregard of a federal law forms a key part of the petitioner's complaint about the award, the federal questions thereby presented are substantial enough to support federal jurisdiction. First, although review for manifest disregard is "severely limited," DiRussa, 121 F.3d at 821, if engaging in such review is essentially all that is required of the reviewing court, it is plain that federal questions will predominate. Second, there is a clear federal interest in resolving these questions. *While federal claims may appropriately be resolved through arbitration, the federal courts have a strong interest in ensuring that arbitrators interpret and apply federal law properly*, even if within a wide range of tolerance. Ibid. [emphasis added]

The basis for jurisdiction in this matter is Pala's challenge of the Arbitration Award on the ground the Arbitrator manifestly disregarded federal law. The federal law at issue relates to the application of the total cost method of calculating damages. The total cost method originated in the federal courts and is now recognized by federal substantive law as a disfavored technique for establishing damages.

The total cost method and the four requirements that would later be accepted by the federal courts were generally established in Great Lakes Dredge & Dock Co. v. United States, 96 F.Supp. 923 (Ct. Cl. 1951), cert. denied, 342 U.S. 953 (1952); See Boyajian v. United States, 423 F.2d 1231, 1240 (1970); and Aaen, *The Total Cost Method of Calculating Damages in Construction Cases*, 22 Pacific L.M. 1185, 1195-1196 (July 1991). A few years later, the United

108798.000005/431113.01

1 | States Court of Claims provided further analysis of the method in <u>F.H. McGraw and Company v.</u>

2 | <u>United States</u>, 130 F.Supp. 394 (1955).  The Court of Claims stated that it did not intend in <u>Great</u>

3 | <u>Lakes Dredge & Dock Co.</u>, "to give approval to proof of damages by showing difference of cost

4 | and bid on the entire job." <u>Id.</u> at 400.  In rejecting the proffered "total cost" damage proof, the

5 | Court stated "(t)his method of proving damage is by no means satisfactory, because among other

6 | things, it assumes plaintiff's costs were reasonable and that plaintiff was not responsible for any

7 | increase in cost, and because it assumes plaintiff's bid was accurately computed, which is not

8 | always the case by any means." <u>Ibid.</u>  The Court then flatly stated that the total cost method

9 | should only be used in "an extreme case and under proper safeguards." <u>Id.</u> at 400.  The proper

10 | safeguards were eventually defined in 1968 in <u>WRB Corp. v. United States</u>, 183 Ct. Cl. 409

11 | (1968).  The court found "(t)he acceptability of the method hinges on proof that (1) the nature of

12 | the particular losses make it impossible or highly impracticable to determine them with a

13 | reasonable degree of accuracy; (2) the plaintiff's bid or estimate was realistic; (3) its actual costs

14 | were reasonable; and (4) it was not responsible for the added expenses." <u>Id.</u> at 426.  While

15 | various states, including California[7], have reluctantly applied the four-part test, it remains a

16 | matter of federal common law and federal courts have a strong interest in its proper application.

17 | **IV.**

18 | **DISCUSSION**

19 |     Pala is not asking the Court review the merits of the arbitration award, nor is it asking the

20 | Court to re-litigate this matter.  Pala is requesting only that the Court recognize the Arbitrator's

21 | refusal, as confirmed on the record, to apply controlling federal law.  The Arbitrator refused to

22 | require DPR to present exact proof as to each part of the four-part test governing application of

---

[7] The California Supreme Court recently recognized, and confirmed the general disfavor with, the total cost method and the four-part test in the context of a public works project.  <u>Amelco Electric v. City of Thousand Oaks</u>, 27 Cal.4[th] 228, 243 (2002).  The California Supreme Court acknowledged the origin of the total cost method in the federal common law, and grounded its analysis in the following federal cases - <u>WRB Corporation</u>, supra; <u>Servidone Construction Corp. v. United States</u>, 931 F.2d 860 (1991); <u>Dawco Construction, Inc. v. United States</u>, 930 F.2d 872, 882 (Fed.Cir. 1991), overruled on other grounds in <u>Reflecton, Inc. v. Dalton</u>, 60 F.3d 1572, 1583 (Fed.Cir. 1995); <u>Boyajian v. United States</u>, 423 F.2d 1231 (Ct.Cl. 1970); and <u>S.W. Electronics & Manufacturing Corp. v. United States</u>, 655 F.2d 1078 (Ct.Cl. 1981).

-9-

1   the total cost method of calculating damages.  While Pala believes exact proof is lacking as to

2   each part of the test, the focus of this Petition is on the absolute failure of proof of the second

3   requirement -- that the estimated costs were reasonable.  DPR failed to put on any evidence of the

4   reasonableness of its budget for any of the specific line items in its statement of underruns and

5   overruns.

6       Federal law regarding the total cost method is well-defined and, as admitted by DPR,

7   applicable to this case.  The Arbitrator was repeatedly advised of the controlling law, and even

8   acknowledged that estimated costs must be proved reasonable on a line item by line item basis.

9   Based on the Arbitrator's refusal to apply the law, and his refusal to require DPR to meet its

10  burden of proof, the Award should be vacated as a "manifest disregard" of the law.

11  **A.      Manifest Disregard of the Law.**

12      Section 10 of the FAA authorizes "the United States court in and for the district where the

13  [arbitration] award was made" to "make an order vacating the award" under certain statutory

14  grounds.  9 U.S.C. §10.  In addition to these statutory grounds, federal courts allow challenges to

15  arbitration awards for "manifest disregard of the law."  See, Prudential-Bache Securities, Inc. v.

16  Tanner, 72 F.3d 234, 237 (1st Cir. 1995) ; DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818,

17  821 (2d Cir. 1997); Glennon v. Dean Witter Reynolds, Inc., 83 F.3d 132, 135 (6th Cir. 1996);

18  Sheet Metal Wkrs. Intern. Ass'n v. Kinney Air Cond., 756 F.2d 742, 746 (9th Cir. 1985) citing

19  American Postal Workers v. U.S. Postal Service, 682 F.2d 1280, 1284 (9th Cir. 1982); and

20  Denver & Rio Grande Western R. v. Union Pac. R., 119 F.3d 847, 849 (10th Cir. 1997).

21      A "manifest disregard of law" is defined generally as a deliberate refusal to apply the

22  governing law.  "Manifest disregard" exists when the error was "obvious and capable of being

23  readily and instantly perceived by the average person qualified to act as an arbitrator."  Merrill

24  Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986).  "There must

25  be some showing in the record . . . that the arbitrator appreciated the existence of a clearly

26  governing legal principle but decided to ignore it . . ."  O.R. Securities, Inc. v. Professional

27  Planning Assocs., Inc., 857 F.2d 742, 747 (11th Cir. 1988).  To vacate an award based upon a

28  "manifest disregard of the law," a court need only find that (i) the arbitrator knew of a governing

1  legal principle yet refused to apply it or ignored it altogether, and (ii) the law ignored by the

2  arbitrators was "well defined, explicit, and clearly applicable to the case." DiRussa, supra, 121

3  F.3d at 821.

4  **B.    Application of the Modified Total Cost Method.**

5          There are generally two methods used for pricing construction damages - actual cost and

6  total cost. "Clearly, the 'actual cost method' is the preferred method for calculating damages

7  because it provides the court . . . with documented underlying expenses ensuring that the final

8  amount of the equitable adjustment will be just that -- equitable -- and not a windfall for either the

9  government or the contractor." Dawco Construction, supra, 930 F.2d at 882.   On the other hand,

10 the total cost method is universally disfavored. F.H. McGraw & Co., supra, 130 F.Supp. at 400.

11         The total cost method of proving damages is disfavored because, among other things, "it

12 assumes plaintiff's bid was accurately computed, which is not always the case, by any means."

13 Ibid.   Bidding inaccuracies can unjustifiably reduce the contractor's estimated costs and

14 performance inefficiencies can inflate a contractor's costs under the total cost method. These

15 inaccuracies and inefficiencies can thus skew accurate computation of damages. Servidone,

16 supra, 931 F.2d at 861-862.   Application of the total cost method is therefore limited to

17 "extraordinary circumstances where no other way to compute damages was feasible and where

18 the trial court employed proper safeguards." Servidone, supra, 931 F.2d at 862 citing Great Lakes

19 Dredge & Dock Co. v. United States, 119 Ct.Cl. 504, 559, 96 F.Supp. 923, 926 (1951); and

20 Boyajian v. United States, 423 F.2d 1231, 1241, 191 Ct.Cl. 233 (1970).

21         The claimant must establish with prima facie evidence each of the four requirements to be

22 entitled to any recovery. WRB Corp., supra, 183 Ct.Cl. at 426.   The claimant must apply the

23 method to a specific portion of the work rather than the entire project.   In other words, the

24 claimant must establish that its estimated costs are reasonable on a line by line item basis. Such

25 proof is critical because the accuracy of the total cost method is dependent upon the accuracy of

26 the estimates. The total cost method will result in a windfall to the claimant if the claimant's bid

27 was significantly underestimated.

28         To prevent a windfall, federal courts require the claimant to present documentation or

-11-

1  testimony supporting each line item of its estimate. It is patently insufficient to simply declare

2  that the estimate *as a whole* is reasonable. The trier of fact must be allowed to get behind the

3  numbers that serve as the basis for the estimated costs (i.e., labor rates, estimated materials costs,

4  subcontractor buyouts, etc.) The defendant must also be given the opportunity to rebut the

5  claimant's supporting documentation or testimony. Without such evidence, the courts will not

6  allow a claimant to calculate its damages based upon the total cost or modified total cost method.

7      In WRB Corp., supra, the court prohibited the use of the total cost method for failure to

8  prove the reasonableness of its estimates. Specifically, the court held that the claimant's failure

9  to produce a breakdown of its estimates was evidence that the bid was unreasonable. The court

10  stated in pertinent part:

11
12
13           [W]e would hesitate before concluding that plaintiff sufficiently proved the reasonableness of its estimates or its actual costs. Among other things, it did not produce a reliable breakdown of its overall estimates and the cost of its concrete and carpentry operations. WRB Corp., supra, 183 Ct.Cl. at 426.

14

15      Similarly, the Third Circuit in In re Meyertech Corp., 831 F.2d 410 (3rd Cir. 1987)

16  confirmed the lower court's conclusion that the total cost method was inappropriate where there

17  was insufficient evidence to support the claimant's bid estimates. See also R.C. Hedreen Co.,

18  1978 WL 2051 (G.S.B.C.A.), 7802 BCA P 12,475, GSBCA No. 4841 [no supporting

19  documentation or testimony was given as to the reasonableness of estimated labor costs.]

20  **C.**    **The Arbitrator Manifestly Disregarded Controlling Federal Law Regarding the Modified Total Cost Method of Calculating Damages.**

21

22      Federal common law originally established and subsequently defined and applied the total

23  cost method of calculating damages. The result is a well-defined body of federal law. The

24  Arbitrator was fully aware of this body of law, yet deliberately refused to apply it. The record, as

25  cited below, establishes the Arbitrator's knowledge of the law and DPR's absolute failure of

26  proof.[8]

27

28  

---

[8] This case is different in that the arbitration proceedings were transcribed by a court reporter. Pala insisted upon having the arbitration transcribed because of the great potential for abuse and misapplication of the heavily

-12-

108798.000005/431113.01

1    DPR's lump sum budget, which is at the crux of this Petition (and DPR's claim), was

2    prepared by DPR during its negotiations with Pala to convert to the Lump Sum Contract.  The

3    budget consists of estimated costs allocated to each phase code, within each system, and for each

4    project (the projects being the casino, wastewater facility, Highway 76, parking garage, and the

5    convenience store).[9]  Exhibit "I" to NOL, at 68:17 - 69:6.  It was based upon internal estimates of

6    DPR's self-performed work and buyouts of subcontractors.  Exhibit "I" to NOL, at 70:15 - 71:6.

7    In his opening statement to the Arbitrator, DPR's counsel agreed that the modified total cost

8    method must be applied to the smallest affected portion (the line items of work) of the contract.

9    However, DPR mistakenly applied the method to its lump sum budget *as a whole*, and not to

10   discreet line items in the budget -

> Another point of agreement is we believe Pala accurately describes
> the legal test for using both the total cost method as well as what
> we're doing in this case, which is the modified total cost approach.
> . . . We also agree with their [Pala's] statement in their brief that the
> modified total cost approach, which is what we are applying,
> should only be applied to the smallest portion of the contract that
> can be clearly identified.  That's when you use it.  And I wanted the
> Court to note that we are following this rule here.  Because we are
> only making a claim for post-lump sum work and for that work that
> hadn't been captured in either our change quotations or our
> subcontractors' change order.

18   (Exhibit "H" to NOL, at 8:12 - 9:5.)

19       The result of DPR's misapplication is that DPR failed to produce any documentary or

20   testimonial support for the reasonableness of its internal estimates for self-performed work or for

21   the work of its subcontractors.  DPR offered no foundational facts, such as the estimates

---

disfavored total cost method.  Pala has provided the Court copies of the key transcripts, including Opening Statement (Exhibit "H" to NOL), Closing Argument (Exhibit "O"), and all of the testimony of DPR's Mr. Carriveau (Exhibits "I," "J," and "M" to NOL) and Mr. Conover (Exhibits "K," "L," and "M" to NOL), and Pala's expert Mr. William Schwartzkopf (Exhibit "N" to NOL).

[9] For example, on the first page of Arbitration Exhibit 786 the Casino is identified as the Project.  Exhibit "A" to NOL.  Underneath the Casino are various system codes, i.e., "02 Sitework".  Work performed under the system code for Sitework is then broken down into multiple phase codes, i.e., "02-0120 Earthwork - Iron Horse"; and "02-180 Erosion Control."  Each of the over 400 phase codes were estimated for the lump sum budget, either by DPR (for self-performed work) or pursuant to buy-outs of the subcontractors.

PALA BAND OF MISSION INDIANS' PETITION TO VACATE ARBITRATION AWARD

1   themselves and the process by which they were prepared.  DPR instead offered only conclusory

2   statements that the lump sum budget *as a whole* was reasonable.

3       Specifically, DPR's in-house "risk manager," Mr. Conover, testified he is not an

4   estimator, and has only estimated one job by himself.  Exhibit "K" to NOL, at 102:25 - 103:11.

5   He based his analysis on the budget as of January 22, 2001, *presuming* that the budget evolved

6   from a bid that occurred "sometime prior."  Exhibit "K" to NOL, 14:4-22.  Most significantly,

7   Mr. Conover could only offer the opinion that the budget *as a whole* was reasonable, and in so

8   doing, actually admitted that he found some areas where DPR underbid items of work -

9       Q.  Did you reach a conclusion concerning whether DPR's lump
        sum budget was reasonable at the time it was prepared?

10      A.  Yes, I did reach a conclusion about that.
        Q.  What was your conclusion and why?

11      A.  Shortly into my engagement, I got hold of the lump sum budget

12      and I dug into that because it's appropriate to determine whether or
        not it's reasonable.  I had many conversations with Scott Carriveau,
        many meetings with Scott Carriveau, and, in a nutshell, to be

13      responsive to your question, <u>I determined that in most cases, the</u>

14      <u>budget was, in fact, reasonable.  In a few cases, I felt like there</u>
        <u>were some areas that perhaps DPR underbid a certain item of work</u>

15      <u>or perhaps did not view the scope of work as I viewed it, but,</u>

16      <u>generally, I believe the budget was reasonable.</u>
        Q.  What, if any steps or action did you take after assessing the

17      reasonableness of the lump sum budget at the time it was prepared,
        how did that impact your cost analysis?

18      A.  Well, as I said, I identified areas initially where I had questions.

19      I looked -- at that point, I made phone calls.  I looked at certain
        vendor contracts, certain vendor agreements.   In cases where I

20      confirmed that perhaps there was an estimates underrun, I ascribed
        it -- if there was a variance in that account, in my variance analysis,

21      I ascribed or attributed any overrun to DPR.

22      Q.  So even within the total number of the $56,150,00, did you find
        as a bottom line number that that was a reasonable budget?

23      A.  Yes.

24   (Exhibit "K" to NOL, at 72:21-74:2.)

25       This testimony reveals, among other things, that it was within DPR's power to offer

26   evidence required to satisfy the second part of the four-part test, that its line item estimates were

27   reasonable.  Instead of offering such evidence, DPR attempted to white wash its complete failure

28   of proof by arguing that the lump sum budget was reasonable *as a whole* because it reflected

-14-

PALA BAND OF MISSION INDIANS' PETITION TO VACATE ARBITRATION AWARD

1    committed buyouts from the subcontractors.  The buy-out was roughly 90% complete when Mr.

2    Carriveau was preparing the final lump sum budget (Exhibit "K" to NOL, at 29:13-24), and the

3    buy-outs constituted a "lion's share" of the budget.  Instead of calling the subcontractors to testify

4    as to the reasonableness of their bids to DPR, DPR simply argued that the buy-outs represented a

5    commitment from the subcontractors to do the work for that price, and on that basis alone, the

6    budget was reasonable.  By that same faulty logic, DPR's budget could be proved reasonable

7    merely by the fact that DPR signed the Lump Sum Contract and committed to Pala that it would

8    finish the Project for that price!  DPR's reasoning was set forth in its closing argument:

9
> . . . Secondly, the contractor has to show you that the bid was
> reasonable.  Here by the time of the lump sum conversion, there
10
> was nothing to bid.  Virtually all the subs had been bought out.
11
> Contractual commitments were in hand to perform the scope of
> work that existed at the time of lump sum before any further
12
> changes.  So the lion's share of the DPR budget that is being used
> as the basis for the cost claim, it's not a matter of estimating it.
13
> That was reality.   There's nothing more realistic than reality.
> That's what you had here.  So there weren't bids or estimates.  This
14
> job was bought out.
15
(Exhibit "O" to NOL, at 29:14-25.)
16
> Pala argued that there's no testimony as to the accuracy of the
17
> budget, none.  Well, excuse me.  <u>The budget as we explained was</u>
> <u>reflecting committed buyouts from the subcontractors.  That's by</u>
18
> <u>definition a commitment by them contractually to do the work for</u>
19
> <u>that price.  The point may be eluding Pala, but that's the answer to</u>
> <u>whether the budget was realistic, because that's the legal test.  Was</u>
20
> <u>it a realistic budget?   It sure is if you got a subcontractor</u>
> <u>contractually committed to do it for that price.</u>  It is realistic to
21
> believe you can have him do that.  If that subcontractor is impacted,
22
> because of things that happened after the point in time of the
> subcontract, you're going to have impact claims, and that's what
23
> we've got here.  That's was the case is about.
24
(Exhibit "O" to NOL, at 117:4-18.)

25        DPR had to do more than *argue* that "[t]here's nothing more realistic than reality."  DPR

26    had to offer actual evidence that its estimates for self-performed work and the prices of the

27    subcontractors were reasonable.    The simple, inescapable truth is that the subcontractor bids

28    alone cannot establish the reasonableness of the lump sum contract.  DPR needed to go through

-15-

108798.000005/431113.01

1   each item for which there was a claim of overrun and present evidence about the budget and how

2   it was developed (whether it was by DPR or a subcontractor), and why it was exceeded.  Exhibit

3   "O" to NOL, at 58:24-59:11.  DPR did no such thing, and admitted as such in closing argument -

4   > Mr. Ramseyer is correct that we did not go through each of the
> literally hundreds of line items in the variance cost analysis and tell

5   > an anecdotal story for each one. . . .

6   (Exhibit "O" to NOL, at 112:25-113:3.)

7   And to ensure the Arbitrator was acutely aware of DPR's failure, counsel for Pala went

8   through numerous examples during his closing argument of line-items in the budget where DPR

9   offered no evidence whatsoever with regard to the reasonableness of the budget or the allocation

10   to Pala.  Exhibit "O" to NOL, at 89:11-95:15.

11   Finally, a "manifest disregard of law" requires that there be a showing the arbitrator

12   appreciated the existence of the governing law.  It would be near impossible for DPR to argue

13   that the arbitrator did not know of the four-part test governing the application of the total cost

14   method of calculating damages.  This is particularly true considering the Arbitrator's experience

15   as a Superior Court judge, and his review of the parties' briefs,[10] the cases cited therein, and

16   testimony offered at the Arbitration.  However, it is not necessary for this Court to rely solely on

17   the foregoing because the Arbitrator acknowledged on the record the governing legal principle --

18   that a claimant must establish the reasonableness of the budget on a line item by line item basis.

19   This acknowledgement took place during an exchange regarding the anticipated testimony of

20   Pala's damages expert Mr. Schwartzkopf - [11]

21   > MR RAMSEYER:  The relevancy it -- goes No. 1, to the
> overall validity of the methodology, and it gives specific examples

22   > as to where they have not met that methodology.

23   > For instance, as Mr. McCarthy pointed out in his opening
> and I think in his brief, you have to apply -- if you're going to apply

24

25   _____

[10] Pala's Arbitration brief is attached to the NOL as Exhibit "E," and DPR's Arbitration brief is attached to the NOL

26   as Exhibit "F."

27   [11] Mr. Schwartzkopf's is the preeminent authority in the field of construction claims and damages.  He has authored
the major treatises in the area, including *Calculating Lost Labor Productivity in Construction Claims*, 1995, and

28   *Calculating Construction Damages*, 1992 and 2001.

this modified total cost to the smallest possible increment that you can, in here, it's not so much an issue of overall is the bid reasonable, but it's with regard to these individual line items.

As to the application or the methodology, Mr. Schwartzkopf is doing nothing more than pointing out areas, as he did in his deposition, where he has raised serious questions and has opinions with regard to that.  It's consistent with his designation.  It's consistent with what the law is.  It's consistent with his deposition.  We should be allowed to continue.

MR. McCARTHY:  I'm repeating myself at this point.  It sounds like he's trying to do exactly what Mr. Hinzman came in and tried to do, and you're only entitled to one expert per topic.  And he said he had no opinion as to the overall reasonableness of the budget, and I believe that is the law.  Of course, that's for you to decide, your Honor, whether the overall budget or bid was reasonable.

The law to my view and it's for you to decide, your Honor, is not whether each particular line item on a budget was or was not reasonable.  That's not the test.  It's whether your overall budget or bid is realistic.  It doesn't have to be 100 percent accurate, simply realistic.

MR. RAMSEYER:  We've certainly briefed it.  We briefed the issue.  <u>They are asking for discrete line items of damage, and in order to do that, as I think the law supports, you have to establish the reasonableness of those particular line items.  The law applies as to discrete items.</u>

<u>I remember Mr. McCarthy in his opening talking about how he agreed with our citation to case law that says you got to apply it to the smallest discrete element that you can.</u>

THE ARBITRATOR:   Amelco clearly holds that, no question.

(Exhibit "N" to NOL, at 26:21 - 28:14.)

In the end analysis, there is no argument that the Arbitrator completely ignored the law governing application of the total cost method despite his acknowledgement of the law on the record.  The Arbitrator admitted as much in his Award.  In discussing the burden of proof as to each part of the total cost claim, the Arbitrator made it abundantly clear that he was ignoring DPR's burden -

<u>Difficulty in presenting exact proof as to each part of the damages alone is not a reason to deny a claim.</u>  What is required is that there is [sic] reasonable method of computation that produces a basis for a reasonable approximation of the claimed damages.  <u>While the application of the law requiring a claimant to meet the requisite</u>

-17-

1            <u>burden of proof cannot be ignored it can be and is tempered</u> by applying the standards of reasonableness, fairness and equity, a concept that is supported by case decisions and literature dealing with claims of this nature.

2

3

4    (Exhibit "G" to NOL, at Arbitration Award, 7:20-27)

5 V.

6 <u>**THE ARBITRATOR'S AWARD OF PRE-JUDGMENT INTEREST**</u>

7 <u>**SHOULD BE VACATED.**</u>

8       As a general rule in federal court, interest is to be awarded when the amount of the

9 underlying liability is *reasonably capable of ascertainment.* <u>Stroh Container Co. v. Dephi</u>

10 <u>Industries, Inc.</u>, 783 F.2d 743 (8th Cir. 1986), citing <u>Behlar v. Smith</u>, 719 F.2d 950, 954 (8th Cir.

11 1984). Pursuant to California law, where the damage claim is *unliquidated* (i.e., an amount not

12 certain or capable of being made certain by calculation), prejudgment interest is recoverable at the

13 discretion of the judge, but in no event is it recoverable from a date prior to the date the action

14 was filed. Cal. Civ. Code §3287(a). While the law supports the award of pre-judgment interest,

15 there are clear legal limitations as set forth above. If the amount a defendant owes is

16 unascertainable because, for example, there is a dispute as to computation, the award of pre-

17 judgment interest is limited. Despite the fact there was a clear dispute as to the proper way to

18 compute DPR's alleged damages, the Arbitrator disregarded both federal and state limitations by

19 awarding pre-judgment interest on an award that he admitted was uncertain.

20       In applying the modified total cost method of calculating damages, the Arbitrator found

21 that "(t)he particular losses make it impossible and impractical to be determined with a

22 reasonable degree of accuracy." Ex. "G" to NOL, at 8:5-6. In the Arbitrator's own words, DPR's

23 damage claim was unliquidated. The Arbitrator had to engage in considerable gymnastics,

24 unexplained to the parties, to even arrive at his final number. He started by reducing the

25 allocation to Pala to $2.7 million without explanation. He made percentage reductions to the

26 subcontractors' claims, and then further reduced the total amount by 25%, again without

27 explanation. Exhibit "G" to NOL, at 9:7-16.

28       Despite the fact DPR's damages were admittedly uncertain, the Arbitrator awarded pre-

-18-

PALA BAND OF MISSION INDIANS' PETITION TO VACATE ARBITRATION AWARD

1   judgment interest dating all the way back to June 15, 2001.  Pursuant to federal law, only post-

2   judgment interest should have been awarded because the damages were incapable of being made

3   certain.  Under the California Code of Civil Procedure, the Arbitrator had the discretion to award

4   interest dating back only to the filing of the Demand for Arbitration on or about June 20, 2002.

5        Pala contends the Arbitrator, despite his years on the San Diego Superior Court Bench,

6   disregarded explicit law governing the award of pre-judgment interest.  Should the Court vacate

7   the Arbitration Award and remand the matter for proper determination, Pala requests that the

8   Court instruct the Arbitrator to apply the law governing the award of pre-judgment interest.  If the

9   Court declines to vacate the Award in its entirety, Pala requests that the Court vacate the award of

10   pre-judgment interest in its entirety, or at the very least, the award of interest prior to June 20,

11   2002, as a "manifest disregard of the law."

12   **VI.**

13   **<u>CONCLUSION</u>**

14        Pala is not asking this Court to ignore the rules that protect and govern arbitration awards.

15   Pala understands the arbitration process would be subverted if normal appellate review of

16   arbitration awards existed.  However, there can be no question that the arbitration process is

17   equally subverted when an arbitrator manifestly disregards the law.  Arbitrators certainly have

18   discretion to exercise their judgment when applying governing legal principles.  But an arbitrator

19   cannot be allowed to explicitly acknowledge controlling law, and then turn around and not apply

20   it.  Such disregard of the law is a disregard of the arbitration process itself.  It subverts the entire

21   process, and perhaps most damaging, it discourages parties from agreeing to and engaging in

22   arbitration of disputes.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1    Based on the Arbitrator's refusal to apply the law regarding the total cost method and the

2  award of pre-judgment interest, and his refusal to require DPR to meet its burden of proof, the

3  Award should be vacated as a "manifest disregard" of the law.

4  DATED:  October 30, 2003                    Respectfully submitted,

5                                              PROCOPIO CORY HARGREAVES
                                                  & SAVITCH LLP
6

7                                              By: _____

8                                              Craig A. Ramseyer
                                               Scott R. Omohundro
9                                              Attorneys For Respondent PALA BAND OF
                                               MISSION INDIANS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-20-

PALA BAND OF MISSION INDIANS' PETITION TO VACATE ARBITRATION AWARD

108798.000005/431113.01

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

American LegalNet, Inc.   www.USCourtForms.com

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
PALA BAND OF MISSION INDIANS

**DEFENDANTS**
DPR CONSTRUCTION, INC.

**FILED**

**(b)** County of Residence of First Listed Plaintiff <u>San Diego</u>
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed _____ OCT 3 0 2003
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Craig A. Ramseyer
Scott R. Omohundro
Procopio Cory Hargreaves & Savitch LLP
530 B Street, Ste. 2100, San Diego, CA 92101
619-238-1900

Attorneys (If Known)
Richard E. McCarthy
Solomon Ward Seidenwurm & Smith LLP
401 B Street, Ste. 1200
San Diego, CA 92101
619-231-0303

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

'03 CV 2153 DMS AJB

---

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
       Plaintiff

☒ 3  Federal Question
       (U.S. Government Not a Party)

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       (Indicate Citizenship of Parties
       in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

|  | PLF | DEF |  | DEF |
|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 ☐ 6 |

☒ 4 (Incorporated or Principal Place — DEF)

x Federally recognized Indian tribe

---

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury — Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights / ☐ 555 Prison Condition | | | |

---

(PLACE AN "X" IN ONE BOX ONLY)

## V. ORIGIN

☒ 1  Original
       Proceeding

☐ 2  Removed from

☐ 3  Remanded from

☐ 4  Reinstated or

Transferred from
another district
☐ 5  (specify)

☐ 6  Multidistrict

Appeal to
District
Judge from
☐ 7  Magistrate
       Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

Motion to vacate arbitration award, 9 U.S.C. section9, et. seq.        9·0010 DPJ

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
     UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S)
       IF ANY
(See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE 10/30/03

SIGNATURE OF ATTORNEY OF RECORD

RP $150.00   10/31/03   #98395 VB

American LegalNet, Inc. | www.USCourtForms.com